UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEITH RUMFELT,

                                 Plaintiff,                        Case # 18-CV-6420 FPG

v.                                                                  DECISION AND ORDER

MIDLAND FUNDING LLC,

                                 Defendant.
_____

**INTRODUCTION**

Plaintiff Keith Rumfelt brings this action against Defendant Midland Funding LLC, alleging that Midland violated the Fair Debt Collection Practices Act ("FDCPA") when it unsuccessfully sued Rumfelt to collect a credit card debt. ECF No. 13. Presently before the Court is Midland's motion to dismiss Rumfelt's amended complaint for failure to state a claim. ECF Nos. 15, 16. For the reasons stated below, Midland's motion to dismiss is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

In June 2017, Midland, a debt buyer and collector, sued Rumfelt to collect a credit card debt that Rumfelt originally owed to Credit One Bank. ECF No. 13 ¶¶ 7-12. In its collection complaint, Midland alleged that it was the owner and assignee of Rumfelt's debt via a chain of title between Credit One and Midland, *id.* ¶ 11, but later, Midland filed an affidavit describing a chain of title that did not match the one alleged in the complaint and did not link the debt from Credit One to Midland. *Id.* ¶¶ 15-16. Rumfelt hired an attorney and the case advanced to a

mandatory arbitration proceeding at which Midland appeared but failed to offer any admissible testimony or evidence. *Id.* ¶¶ 12-13, 33. The case was thus decided in Rumfelt's favor. *Id.*

In June 2018, Rumfelt brought this case against Midland. Rumfelt claims that by suing him in the collection case, Midland violated the following provisions of the FDCPA:

- § 1692e, which prohibits the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt";

- § 1692e(2)(A), which prohibits the "false representation of the character, amount, or legal status of any debt";

- § 1692e(5), which prohibits "threat[s] to take any action that cannot legally be taken or that is not intended to be taken";

- § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer";

- § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt"; and

- § 1629f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Rumfelt's five enumerated claims in his amended complaint each assert multiple instances of misconduct that allegedly violated various FDCPA provisions. Accordingly, the Court analyzes Rumfelt's claims not by his complaint's claim numbers, but by each discrete instance of alleged misconduct. Rumfelt alleges that Midland violated the FDCPA by:

1. Misrepresenting in the collection complaint that it was assigned or owned Rumfelt's credit card debt, in violation of §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1629f(1), *id.* ¶¶ 43, 57, 63;

2. Falsely, deceptively, and misleadingly claiming in the collection complaint that it was entitled to pursue collection activities against Rumfelt without proof that Rumfelt was ever notified that the debt was assigned to Midland, in violation of §§ 1692e, 1692e(5), and 1692f, *id.* ¶¶ 46, 52, 64, 66;

3. Misrepresenting that it was entitled to take judgment based on an "account stated" cause of action even though such a cause of action is not viable under New York Law, in violation of §§ 1692e, 1692e(5), 1692e(10), and 1692f, *id.* ¶ 47, 53, 58, 65;

4. Overstating the amount of debt due, in violation of § 1692e(2)(A), *id.* ¶ 48;

5. Threatening to take a judgment that it could not legally take because it could not prove ownership of the debt, because Rumfelt was not notified of the assignment, and because account stated was not a viable cause of action, in violation of § 1692e(5), *id.* ¶ 51; and

6. Threatening to take judgment based on allegations that Midland did not intend to prove, in violation of § 1692e(5), *id.* ¶¶ 54, 59.

*See also* ECF No. 18 at 4-5. Rumfelt also alleges that Midland's conduct violated New York General Business Law § 349(a), which prohibits deceptive acts or practices in conducting business, trade, or commerce. ECF No. 13 ¶¶ 68-78.

Midland now moves to dismiss Rumfelt's amended complaint for failure to state a claim.

## LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. 679.

## DISCUSSION

**1. Misrepresentation of Ownership of the Debt (Violation of §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1629f(1))**

Rumfelt first claims that, because Midland "could not and did not prove with admissible evidence" that it owned Rumfelt's debt, Midland misrepresented in its collection complaint that it owned and was entitled to collect the debt. ECF No. 13 ¶ 43, *see also id.* ¶¶ 11, 17, 32-33. He asserts that Midland's collection case was "frivolous, baseless, and without good faith," and that Midland did not intend to prove it. *Id.* ¶¶ 19, 28, 54, 59. In support of this claim he alleges that Midland engages in a "pattern and practice of repeatedly filing collection lawsuits in which it is unable to show that it has standing or ownership of the credit card debt it is attempting to collect," *id.* ¶ 20, and he cites a Consent Order that Midland reached with the Consumer Financial Protection Bureau in which Midland admitted no wrongdoing but agreed to change some of its collection practices, including threatening or filing collection lawsuits without an intent to prove the debt. *Id.* ¶¶ 21-26.

Midland interprets Rumfelt's allegations as claiming that Midland violated the FDCPA by filing the collection case without the immediate means of proving ownership of the debt and then losing the case. This alone, as Midland correctly argues, is not actionable. *See Heintz v. Jenkins*, 514 U.S. 291, 295 (1995) ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'"); *Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 803 (2019) (holding that debt collector's inadequate documentation of assignment and consequent loss of collection case did not amount to a misrepresentation under the FDCPA); *Lena v. Cach, LLC,* No. 14 C 01805, 2015 WL 4692443, at *4 (N.D. Ill. Aug. 6, 2015) ("[T]here is nothing deceptive about being unable to prove . . . [a collection] claim at the time it is filed . . . or

4

at trial, for that matter."); *Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 172 (2d Cir. 2015) (the commencement of a debt collection lawsuit without sufficient evidence to establish plaintiff's case is not an FDCPA violation); *Harvey v. Great Seneca Fin. Corp*, 453 F.3d 324, 331-33 (6th Cir. 2006) (the filing of a collection case without the immediate means of proving the debt is not an FDCPA violation); *Hasbrouck v. Arrow Fin. Servs. LLC*, No. 1:09-CV-748 MAD/RFT, 2011 WL 1899250, at *5 (N.D.N.Y. May 19, 2011) (same).

Rumfelt argues that his allegations go beyond merely pleading that Midland failed to prove its collection case and sufficiently state an FDCPA claim.

The Court finds that Rumfelt falls short of stating an FDCPA claim. Although he employs buzzwords such as "misrepresentation," "frivolous," "baseless," and "bad faith" to characterize Midland's conduct as actionable, he fails to plead sufficient supporting facts to nudge his claims of bad faith "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. His only factual allegations are tied to Midland's failure to prove its case.

To state an FDCPA claim against a debt collector for filing a collection case, a plaintiff must plausibly allege that the debt collector filed its collection case without "a good faith belief in its validity." *Lena*, 2015 WL 4692443, at *4 ("The key is that the collections claim must be brought with a good faith belief in its validity, not its likelihood of success; it is only when the plaintiff lacks a good faith basis for asserting the claim that the filing of a complaint could be deceptive (and therefore sanctionable)."); *see also Juarez v. Portfolio Recovery Assocs., LLC*, No. 14 C 5928, 2015 WL 4764226, at *3 (N.D. Ill. Aug. 12, 2015) ("A debt collector that files suit expecting in good faith to prove its claim, even if he does not ultimately prevail, will not be liable under the FDCPA . . . while a plaintiff that sues in bad faith may be in violation of the FDCPA.") (internal citation omitted).

"In determining whether a debt collector has filed suit in good faith, courts have distinguished between claims a debt collector merely *chooses* not to prove, and claims that a debt collector knows (or should have known) it was incapable of proving at the time the complaint was filed." *Juarez*, 2015 WL 4764226, at *3 (emphasis in original). The rationale appears to be that, where a debt collector does not *know* (or should not necessarily know) that it could never prove its claims, it may, in good faith, file suit never intending to prove its claims, perhaps for economic reasons. But where the debt collector *knows* it could never prove its case—for instance, because it knows that it does not actually own the debt—and sues anyway, the case is filed in bad faith and may violate the FDCPA. Thus, courts have dismissed FDCPA claims which lack an allegation that the debt collector knew or should have known that it could never prove its case, or where, though present, such an allegation is not supported by facts.

For example, in *Lena*, the plaintiff alleged that the debt collector knew it could not prove its case with admissible evidence, never intended to go to trial, and only filed its collection case against her as part of its routine practice of suing consumers to bully them into settling. 2015 WL 4692443, at *3. The court dismissed the plaintiff's FDCPA claims because even though she alleged that the debt collector knew it could not prove its case, her only supporting fact was that the debt collector voluntarily dismissed its case on the day of trial. *Id.* at *4. The court held that "[s]omething more would be needed to permit the inference that this 'business practice' is 'inherently deceptive'" because debt collectors "have financial incentives to dismiss collection actions short of trial." *Id.* at *4 n.6. The plaintiff also did not allege that there were any misleading representations in the lawsuit itself, and although she did allege that the debt collector "actively concealed its lack of standing," the court found that the debt collector's allegation in its collection complaint that it owned the debt was

> not deceptive or misleading, even if [the debt collector] ultimately could not prove it to be true with admissible evidence. The allegation was subject to testing in the course of a lawsuit. This Court agrees with the courts that have held that that the litigating of a debt-collection lawsuit, even with insufficient evidence, is not inherently deceptive under § 1692e, absent a credible allegation that the debt was not owed or that there was no good-faith basis to support the claims asserted in the state court lawsuit.

*Id.* at *5.

Similarly, in *Delisi v. Midland Funding, LLC*, No. 4:14CV2125 RWS, 2015 WL 4393901, at *6 (E.D. Mo. July 16, 2015), the plaintiff alleged that Midland sued him with full knowledge that it lacked evidence to prove standing and with the intent to take advantage of him by obtaining a default judgment, but the complaint stopped short of alleging that Midland *never* intended to prove its case. *Id.* at *7. The court dismissed the plaintiff's FDCPA claims, observing that "there are valid arguments for finding that the filing of a debt collection lawsuit with only the intent to prosecute it to the extent the case may be resolved by the entry of a default judgment or by some other low-cost means is not a FDCPA violation." *Id.* at *7 & n.5.

In *Richardson v. Midland Funding, LLC*, No. CIV. CCB-13-1356, 2013 WL 6719110 (D. Md. Dec. 18, 2013), *aff'd*, 583 F. App'x 124 (4th Cir. 2014) (summary order), the plaintiff alleged that Midland sued her as part of its routine "scattershot litigation strategy" in which it files lawsuits without investigating whether a proper basis exists and without ever obtaining admissible evidence to support its claims in order to "deceive consumers into accepting default judgments or to coerce them into settling." *Id.* at *1, 6. Like here, to support these claims, the plaintiff pointed to a consent judgment that Midland reached with the Attorney General of Minnesota in which Midland agreed to change some of its debt collection practices. *Id.* at *6. The court dismissed the plaintiff's FDCPA claim as insufficient because she had not denied owing the debt or made "sufficient allegations of misrepresentations or falsities within the collection complaint." *Id.* at *7.

7

Other courts have dismissed FDCPA claims where, like here, the plaintiffs failed to allege that the debt collectors did not actually own the debt or made statements that the debt collector knew or should have known were false. *See Nickoloff v. Wolpoff & Abramson, L.L.P.*, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007) (dismissing FDCPA claim "[b]ecause Plaintiff [did] not allege that Defendant Centurion did not actually own the debt at the time it brought the arbitration claim . . . ."); *Bell v. Deutsche Bank Nat'l, Tr. Co.*, No. CV GLR-18-1077, 2019 WL 339645, at *5 (D. Md. Jan. 25, 2019) (dismissing FDCPA claims where plaintiffs "plead that Defendants misrepresented that they have rights to the loan, but do not allege any specific details as to why Defendants do not have rights to the loan") (footnote and citation omitted); *Bandy v. Midland Funding, LLC*, No. CIV.A. 12–00491–KD–C, 2013 WL 210730, at *8 (S.D. Ala. Jan. 18, 2013) (dismissing FDCPA claims where plaintiff alleged that Midland intended not to prove its claim—as demonstrated by having no evidence and choosing not to seek any—and knew it would lose, but did not allege that Midland knew or should have known that any statement in its complaint was false); *Garcia v. Portfolio Recovery Assocs., LLC*, No. 115CV3685NLHJS, 2018 WL 3218665, at *4 (D.N.J. June 29, 2018), *appeal dismissed*, No. 18-2692, 2018 WL 7140574 (3d Cir. Nov. 16, 2018) (finding no FDCPA violation where plaintiff alleged that debt collector never intended to prove its case and only intended to induce a default or settlement, but did not allege that debt collector knew that it could not prove its case).

On the other hand, courts have permitted FDCPA claims to proceed where the plaintiff alleged that the debt collector *knew* it could not prove the debt, or where the plaintiff pointed to specific falsities in the debt collector's supporting documentation.

For example, in *Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321 (S.D. Ala. 2013), like here, the plaintiff claimed that Midland sued him in bad faith as part of its uniform practice of

8

filing collection cases without making any effort to obtain evidence to prove its case and without intending to do so, but rather intending to obtain a default judgment or coerce a settlement. *Id.* at 1323, 1325. Unlike here, however, the plaintiff in *Samuels* specifically denied owing any debt to Midland, *id.* at 1323, and alleged that Midland filed its collection case with "full knowledge that it would not (and therefore could not) prove its claim." *Id.* at 1331. The *Samuels* court denied Midland's motion to dismiss the plaintiff's FDCPA claims but declined to "definitively resolve" whether the FDCPA provides a cause of action under the facts of that case. *Id.* at 1331. *See also Brewer v. LVNV Funding, LLC*, No. 4:14CV00942 AGF, 2014 WL 5420274, at *1 (E.D. Mo. Oct. 22, 2014) (allowing FDCPA claim where the plaintiff alleged that debt collector knew it had no evidence with which to establish a claim and lacked the intention to do so); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293 (N.D. Ga. 2010) (allowing FDCPA claim where plaintiff alleged that debt collector sued him on a debt he did not owe and that the debt collector thus could never prove, and that the debt collector knew when it filed suit that it lacked knowledge of the validity of the debt and never intended to verify the debt's validity).

In *Mason v. Midland Funding LLC*, No. 1:16-CV-02867-CC-RGV, 2017 WL 6994577 (N.D. Ga. July 27, 2017), *R&R adopted as modified*, 2017 WL 8186866 (Sept. 29, 2017), the court held that plaintiffs stated an FDCPA claim where they alleged that Midland "filed lawsuits when they should have known that they could never prove their claims in court, and then used [allegedly] fraudulent affidavits to fool courts and consumers into believing they could." *Id.* at *33. *See also Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio 2007) (finding plaintiff stated FDCPA claim where debt collector allegedly filed a "bogus" affidavit containing "false and frivolous assertions" about the debt).

This case is more like the first group of cases. Here, Rumfelt does not explicitly deny that he owes the debt or that Midland owns the debt. He does not allege that Midland filed its collection case knowing that it could never prove ownership of debt.[1] Nor does he allege any misrepresentations or falsities that are not based on the premise that Midland merely failed to prove its ownership of the debt. While Rumfelt alleges that Midland's collections case was "frivolous, baseless, and without good faith," ECF No. 13 ¶ 19, these descriptors are not supported by any factual allegations other than Midland's failure to prove its case and its pattern of failing to prove its cases.

Accordingly, Midland's motion to dismiss on this basis is GRANTED.

**2. Misrepresentation of Right to Collect on Debt Without Notice of Assignment (Violation of §§ 1692e, 1692e(5), and 1692f)**

Rumfelt next claims that "Midland misleadingly alleged in the collection complaint that it was entitled to collect on the debt when in fact it should not have proceeded with a collection action because Rumfelt did not receive a notice of assignment from any predecessor of Midland." ECF No. 18 at 16, *see also* ECF No. 13 ¶¶ 29-33.

Midland responds that since New York law requires the assignor, not the assignee, to provide the debtor with notice of an assignment, "there is no valid cause of action under the FDCPA for any purported failure by [Midland] to provide the notice of assignment to [Rumfelt]." *Strobel v. RJM Acquisitions LLC*, No. 13-CV-2467 JS AKT, 2014 WL 507510, at *4 (E.D.N.Y. Feb. 6, 2014).

The Court finds that Rumfelt states a claim. *Strobel*, on which Midland relies, is distinguishable. In *Strobel*, the plaintiff argued that a debt collection letter was deceptive because

---

[1] While "[t]he FDCPA is 'a strict liability statute' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional," *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437-38 (2d Cir. 2018), whether the debt collector knows that its case is valid or not goes to whether it filed the case in good faith or bad faith.

the debt collector had not notified the plaintiff that her debt had been assigned to it. *Id.* at *4. The court rejected plaintiff's argument for two reasons. *Id.*

First, the court noted that under New York law, "notice of assignment becomes relevant in the context of either a debt that has been reduced to judgment or—at the very least—a creditor's attempt to reduce the debt to judgment." *Id.* (citing N.Y. C.P.L.R. § 5019(c)). Since the debt collector in *Strobel* had only sent a collection letter and had not obtained a judgment or even filed suit, the court held that § 5019(c)'s notice of assignment requirement was not relevant. *Id.*

Second, the court pointed out that New York law requires the assignor, not the assignee, to notify the debtor of the assignment, and thus found that there was no valid cause of action under the FDCPA for the debt collector-assignee's failure to give the plaintiff notice of assignment. *Id.*

Here, while Midland was assigned a debt, not a judgment, it arguably attempted to reduce the debt to judgment by filing the collection case—a situation to which *Strobel* suggests the notice of assignment requirement might apply. Other New York cases have also indicated that the notice of assignment requirement applies to debts, not just judgments. *See In re Pinpoint Techs., LLC*, No. 17339/10, 2014 WL 6780640, at *5 (N.Y. Civ. Ct. Nov. 18, 2014) (holding that in consumer credit litigation, the assignor of the debt or judgment must notify the debtor of the assignment); *Caprara v. Charles Court Assocs.*, 627 N.Y.S.2d 836, 838 (N.Y. App. Div. 1995) (requiring notice of assignment of a promissory note); *CACH LLC v. Fatima*, No. 4381/11, 2011 WL 3518184, at *2 (N.Y. App. Div. Aug. 3, 2011) (requiring notice of assignment of a credit card debt); *S. Shore Adjustment Co. v. Pierre,* 936 N.Y.S.2d 61, 2011 WL 3305923, at *2 (N.Y. Civ. Ct. 2011) (same).

Further, at least two other courts in this circuit have found that a debtor could state an FDCPA claim against an assignee for conducting collection activities before the debtor had been given notice of assignment. *See Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 639

(S.D.N.Y. 2013); *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *11 (E.D.N.Y. Mar. 31, 2016).

In *Musah*, the court held that the plaintiff's claim that he never received notice of an assignment of judgment "provide[d] a suitable basis for Plaintiff's FDCPA claims" because under New York law, "in order to be charged with a duty to pay a debt to an assignee, [a consumer] must first have actual notice of the assignment." 962 F. Supp. 2d at 639 (quoting *Tri City Roofers, Inc. v. Northeastern Industrial Park*, 61 N.Y.2d 779, 780 (1984)).

In *Moukengeschaie*, the court followed *Musah* and held that the plaintiff sufficiently pled an FDCPA claim where the debt collector threatened to collect on an assigned judgment before plaintiff received notice of the assignment. 2016 WL 1274541, at *11.

Accordingly, Midland's motion to dismiss on this basis is DENIED.

3. **Threat to Take Action that Could Not Legally Be Taken or Was Not Intended to be Taken (Violation of § 1692e(5))**

Rumfelt next alleges that by filing its collection complaint, Midland threatened to take a judgment against him even though it could not prove ownership of the debt, never intended to prove its case, and could not legally advance an account stated cause of action. ECF No. 13 ¶¶ 51, 53, 54.

The Court rejects Rumfelt's claim that the filing of a collection complaint constitutes a "threat." Other circuit and district courts have recently reached the same conclusion.

In *St. John v. Cach, LLC*, 822 F.3d 388 (7th Cir. 2016), like here, the plaintiff did not "allege that the defendants represented anywhere in their state court complaints that they intended to go to trial; rather, they allege[d] that the defendants implicitly communicated an intention to go to trial simply by filing the complaints." *Id.* at 390. The Seventh Circuit rejected this allegation, holding that

> the mere filing of a civil action does not include an implicit declaration that the plaintiff intends to advance the action all the way through trial. Litigation is inherently a process. And recovery through that process may be achieved in many ways, and at different stages, of which trial is often not the most cost-effective or desirable. Indeed, the typical plaintiff at the outset of litigation likely hopes to recover through a less cumbersome avenue, such as a settlement or default judgment, and would rather avoid the expense, inconvenience, and uncertainty of trial. That is not "trickery," it is the legitimate exercise of the plaintiff's discretion in determining how to efficiently manage litigation by obtaining an optimal outcome with limited resources.
>
> . . . .
>
> In sum, an unsophisticated consumer could not reasonably conclude that a debt collector implicitly threatens to proceed to trial simply by filing a lawsuit to recover a debt. We therefore hold that § 1692e(5) of the FDCPA does not prohibit debt collectors from filing a collection lawsuit without intending to go to trial. Accordingly, the plaintiffs have failed to state a plausible claim under § 1692e(5) even if the defendants did not intend to go to trial when they filed their collection complaints.

*Id.* at 390-91 (footnote and internal citation omitted).

In *Garcia v. Portfolio Recovery Assocs., LLC*, No. 115CV3685NLHJS, 2018 WL 3218665, at *4 (D.N.J. June 29, 2018), *appeal dismissed*, No. 18-2692, 2018 WL 7140574 (3d Cir. Nov. 16, 2018), the court agreed with *St. John* and found that it was not "reasonable to assume that the filing of a complaint to collect a debt is tantamount to showing an intention (or threat) to litigate that claim on the merits" and "discern[ed] a difference between pursuing a claim through the litigation process and proving the claim at trial." *Id.*

In *Dicesari v. Asset Acceptance LLC*, No. 11-CV-6815, 2012 WL 4108944 (E.D. Pa. Sept. 18, 2012), the plaintiff alleged that the debt collector threatened "to take the legal action of a money judgment against plaintiff." *Id.* at *3. The court found that because the plain language of § 1692e(5) extends only to threats and not actions already taken, the filing of a complaint—an action already taken—did not violate the statute.[2] *See also Daniel v. Asset Acceptance, LLC*, No.

---
[2] Courts are split as to whether § 1692e(5) applies to threats only, or also to actions already undertaken. *Id.* at *3. This court is inclined to join those courts holding that the statute, by its plain language, only applies to threats. *See,*

13

15-CV-10956, 2016 WL 8231941, at *6 (E.D. Mich. June 9, 2016), *R&R adopted sub nom. Daniel v. Midland Funding, LLC*, 2016 WL 4253886 (Aug. 12, 2016) ("[T]the filing of a lawsuit is not a threat to take action in connection with the collection of a debt, it is the taking of an action to collect on a debt. Plaintiff's § 1692e(5) claim fails."); *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) (dismissing § 1692e(5) claim based on the filing of a collection complaint because, "regardless of the legality of Defendants' filing of the [collection] complaint, Defendants did not threaten to take that action, but actually took it by filing the complaint.").

Accordingly, Midland's motion to dismiss on this basis is GRANTED.

**4. Misrepresentation of Entitlement to Take Judgment on "Account Stated" Cause of Action (Violation of §§ 1692e, 1692e(5), 1692e(10), and 1692f)**

Rumfelt next alleges that Midland "falsely, deceptively and misleadingly claim[ed] in . . . the collection complaint that it was entitled to judgment . . . based on an account stated even though New York General Business Law § 517 provides that collection of a credit card debt on the basis of an account stated is against public policy and of no force or effect." ECF No. 13 ¶ 47; *see also id.* ¶¶ 58, 65.

Rumfelt cites no authority invalidating an account stated cause of action or finding that pleading it violates the FDCPA. *Bank of New York-Delaware v. Santarelli*, upon which Rumfelt relies, merely recognized that under N.Y. G.B.L. § 517, "any agreement purporting to provide that a statement sent by the credit card issuer to the cardholder shall be deemed correct unless objected to within a specified period of time is void and of no force or effect." 128 Misc. 2d 1003, 1004, 491 N.Y.S.2d 980, 982 (N.Y. Cnty. Ct. 1985). But § 517 "in no way precludes an action based on

---

*e.g.*, *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) ("[W]e join those courts that have construed the statute in accordance with its unambiguous language."). But as plaintiff only argues that the filing of the collections complaint was a threat to take a judgment, the Court need not decide the issue.

an account stated predicated on the retention of a statement of account for an unreasonable period of time." *Citibank (S. Dakota) N.A. v. Poynton*, 723 N.Y.S.2d 327, 328-29 (N.Y. App. Term 2000) (internal citation omitted). Rather, § 517

> simply prohibits a credit or debit card issuer—in what is essentially a contract of adhesion—from imposing a strict time requirement for the dispute of debts. The effect of such a contractual provision, if enforceable, would be to strip the courts, when ruling on a claim of account stated, of the power to determine what is or is not an "unreasonable" time for the debtor to have retained the account without objection. Thus, while prohibiting the contractual setting of a "specific period" after which an account will be deemed stated, this section does not prohibit any recovery based on account stated.

*Citibank (S. Dakota) N.A. v. Jones*, 706 N.Y.S.2d 301, 302 (N.Y. Dist. Ct. 2000); *see also generally Carpenter v. Monroe Fin. Recovery Grp., LLC*, 119 F. Supp. 3d 623, 628 (E.D. Mich. 2015) (dismissing FDCPA claim where the plaintiff erroneously alleged that the debt collector's account stated cause of action was not cognizable under Michigan law).

Accordingly, Midland's motion to dismiss on this basis is GRANTED.

**5. Overstating Amount Due (Violation of § 1692e(2)(A))**

Finally, Rumfelt alleges that Midland overstated the amount of debt it was entitled to collect from Rumfelt by failing to reduce the amount "to take into account any benefits realized by the original creditor as a result of bad debt deductions for charging off the credit card account allegedly assigned to Midland Funding." ECF No. 13 ¶ 48.

Rumfelt cites no authority holding that an assignee of a charged-off debt must reduce the amount it seeks to collect to account for some tax benefit supposedly received by the original creditor, and the Court finds none. *See Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 473 (S.D.N.Y. 2013) ("[P]laintiffs appear to believe that a debt collector may not lawfully collect the full amount of a debt once the original creditor has written off a portion of the debt. . . . Plaintiffs offer no legal support for this theory."); *Kelly v. Wolpoff & Abramson, L.L.P.*,

15

634 F. Supp. 2d 1202, 1211 (D. Colo. 2008) ("[E]ven if MBNA did receive such tax benefits from the 'charging off' Plaintiff's debt, Plaintiff has pointed to no law suggesting that the amount of a private debt is affected by the tax burdens and benefits relating thereto."); *Haney v. Portfolio Recovery Assocs., L.L.C.,* 895 F.3d 974, 985 (8th Cir. 2016) ("The tax benefit of a debt charge-off—current realization of expense deduction or capital loss—is a matter of concern as between the creditor and the relevant taxing authority. . . . A creditor's potential liability for penalties or additional taxes does nothing to change the liquidated sum the debtor owes the creditor at the time of charge-off . . . .").

Instead, Rumfelt cites cases holding generally that an assignee cannot stand in a better position that the assignor. *See Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126, 325 N.E.2d 137 (N.Y. 1975); *Madison Liquidity Inv'rs 119, LLC v. Griffith*, 57 A.D.3d 438, 440, 869 N.Y.S.2d 496 (N.Y. 2008). Here, Rumfelt has not alleged that Midland would or did receive whatever tax benefit the original creditor may have received from charging off Rumfelt's debt, so Midland does not stand in a better position than the original creditor.

Accordingly, Midland's motion to dismiss on this basis is GRANTED.

## 6. Violation of New York General Business Law § 349(a)

In addition to his FDCPA claims, Rumfelt alleges that Midland's attempt to collect a debt of which it could not prove ownership, "together with other deceptive acts and practices," violated New York General Business Law § 349(a). ECF No. 13 ¶¶ 68-78.

Section 349(a) prohibits deceptive acts or practices in conducting business, trade, or commerce. "To state a claim pursuant to § 349, a plaintiff must allege (1) that the defendant's acts were consumer oriented; (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." *Werner v. Selene Fin., LLC*, No. 17-

16

CV-06514 (NSR), 2019 WL 1316465, at *9 (S.D.N.Y. Mar. 22, 2019). Midland argues that Rumfelt has not sufficiently pled the first two prongs.

As to the first prong, "[i]n the context of debt collection cases, the 'consumer oriented' prong is satisfied where the conduct forming the basis of the complaint was a 'normal part of defendants' business,' in which case the practice could 'have a broad impact on consumers at large.'" *Winslow v. Forster & Garbus, LLP*, No. CV 15-2996 (AYS), 2017 WL 6375744, at *9 (E.D.N.Y. Dec. 13, 2017), *appeal withdrawn*, No. 18-116, 2018 WL 1840195 (2d Cir. Apr. 6, 2018). Here, Rumfelt alleges that Midland is in the business of debt buying and collecting and that its offending conduct was part of its regular pattern and practice. The Court finds that Rumfelt sufficiently alleges that Midland's conduct could "potentially affect similarly situated consumers." *Winslow*, 2017 WL 6375744, at *9 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (1995)).

As to the second prong, to the extent that Rumfelt alleges that Midland violated § 349(a) by misrepresenting that it owned Rumfelt's debt or was entitled to collect it based on an account stated cause of action, the Court finds that Rumfelt fails to state a § 349(a) claim for the same reasons that he fails to state an FDCPA claim. To the extent that Rumfelt alleges that Midland violated § 349(a) by misrepresenting that it was entitled to pursue collection activities against Rumfelt before he had been notified of an assignment, the Court permits Rumfelt's § 349(a) claim to proceed.

Accordingly, Midland's motion to dismiss Rumfelt's N.Y. G.B.L. § 349(a) claim is GRANTED IN PART AND DENIED IN PART.

## CONCLUSION

For the reasons stated, Midland's motion to dismiss (ECF Nos. 15, 16) is GRANTED IN PART AND DENIED IN PART and Rumfelt's claims are adjudicated as follows:

1. Rumfelt's claim that Midland misrepresented that it was assigned or owned Rumfelt's credit card debt, in violation of §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1629f(1) is DISMISSED WITHOUT PREJUDICE.

2. Rumfelt's claim that Midland falsely, deceptively, and misleadingly claimed in the collection complaint that it was entitled to pursue collection activities against Rumfelt before Rumfelt was ever notified of an assignment, in violation of §§ 1692e, 1692e(5), and 1692f MAY PROCEED.

3. Rumfelt's claim that Midland misrepresented that it was entitled to take judgment based on an account stated cause of action even though such a cause of action is not viable under New York Law, in violation of §§ 1692e, 1692e(5), 1692e(10), and 1692f is DISMISSED WITH PREJUDICE.

4. Rumfelt's claim that Midland overstated the amount of debt due, in violation of § 1692e(2)(A) is DISMISSED WITH PREJUDICE.

5. Rumfelt's claim that Midland threatened to take a judgment that it could not legally take because it could not prove ownership of the debt, because Rumfelt was not notified of the assignment, and because account stated was not a viable cause of action, in violation of § 1692e(5) is DISMISSED WITH PREJUDICE.

6. Rumfelt's claim that Midland threatened to take judgment based on allegations that Midland did not intend to prove, in violation of § 1692e(5) is DISMISSED WITH PREJUDICE.

7. Rumfelt's claim that Midland violated New York General Business Law § 349(a) by misrepresenting that it

    - owned the debt is DISMISSED WITHOUT PREJUDICE;

    - was entitled to collect the debt based on an account stated cause of action is DISMISSED WITH PREJUDICE; and

    - was entitled to pursue collection activities against Rumfelt before he had been notified of an assignment MAY PROCEED.

If Rumfelt wishes to amend, he shall seek leave do so through a procedurally compliant motion filed by May 29, 2019. *See* Loc. R. Civ. P. 15. If Rumfelt does not move for leave to amend by that date, Midland shall file its answer by June 19, 2019.

IT IS SO ORDERED.

Dated: April 29, 2019
       Rochester, New York

                                                            HON. FRANK P. GERACI, JR.
                                                             Chief Judge
                                                             United States District Court